# No. 24-40535

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Jorge R. Martinez,

Plaintiff - Appellant

v.

Officer David Hinojosa; City of Laredo,

Defendants - Appellees

---

## On Appeal from
United States District Court for the Southern District of Texas

5:20-CV-75

---

## BRIEF OF APPELLANT JORGE MARTINEZ

---

SUBMITTED BY:
David L. Flores
Griffith Law Group
4228 N. McColl
McAllen, TX 78504

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| City of Laredo | William McKamie of Taylor, Olson, Adkins, Sralla & Elam, L.L.P. Fort Worth, TX |
| City of Laredo | Lindsey Hale of Taylor, Olson, Adkins, Sralla & Elam, L.L.P. Fort Worth, TX |
| David Hinojosa | William McKamie of Taylor, Olson, Adkins, Sralla & Elam, L.L.P. Fort Worth, TX |
| David Hinojosa | Lindsey Hale of Taylor, Olson, Adkins, Sralla & Elam, L.L.P. Fort Worth, TX |

| Appellants: | Counsel for Appellants: |
|---|---|
| Jorge Martinez | David Flores of Griffith Law Group McAllen, TX |

/S/David L. Flores
Attorney of record for Appellant

ii

# STATEMENT REGARDING ORAL ARGUMENT

Appellant, Jorge Martinez, respectfully requests oral argument. This appeal involves significant issues concerning the proper application of qualified immunity, the sufficiency of evidence required to overcome summary judgment, and the Monell liability of the City of Laredo. Given the complex factual record and the nuanced legal standards involved, oral argument would aid the Court's decisional process.

# RECORD REFERENCES

Citations to the original record on appeal will be in the short citation form, *i.e.*, ROA.123.

# TABLE OF CONTENTS

Contents                                                              Page(s)

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

RECORD REFERENCES…………………………………………………….. iii

TABLE OF CONTENTS ....................................................................................... iv

TABLE OF AUTHORITIES ..................................................................................1

JURISDICTIONAL STATEMENT .......................................................................3

STATEMENT OF THE ISSUES ............................................................................3

STATEMENT OF THE CASE ................................................................................4

SUMMARY OF THE ARGUMENT ......................................................................9

ARGUMENT .........................................................................................................11

      I.     Standards of Review………………………………….………..11
            a.     Summary Judgment…………………………………………11
            b.     Qualified Immunity……………………………………….12

      II.    Questions of Fact for the Jury on Hinojosa's claim for Qualified
           Immunity…………………………………………………….....14
            a.     Genuine Question of Material Fact Whether Officer
                   Hinojosa Reasonably Perceived an Immediate
                   Threat Justifying Use of Deadly Force…………..…………14

b.    Genuine Question of Material Fact Whether it was
Feasible for Hinojosa to have issued a warning
before using deadly force……………………………..…23

III.    Monell Claims against the City of Laredo…………………..……..27

CONCLUSION…………………………………………………………………...27

CERTIFICATE OF SERVICE ................................................................29

CERTIFICATE OF COMPLIANCE.......................................................30

# TABLE OF AUTHORITIES

## <u>CASES</u>                                                   <u>PAGE</u>

*Branton v. City of Dallas*,
272 F.3d 730, 738 (5th Cir. 2001)……………………………………………11

*Indest v. Freeman Decorating, Inc.*,
164 F.3d 258, 261 (5th Cir. 1999)…………………………………………..11

*Celotex Corp. v. Cartrett*,
477 U.S. 317, 323, 160 S. Ct. 2548, 2553 (1986)…………………………………..11

*Clark v. Wright National Flood Insurance Company*,
380 F. Supp.3d 523 (2019)……………………………………………...12

*Muniz v. Quarterman*,
Not Reported in F.Supp.2d (2007)………………………………...…………12

*Flores v. City of Palacios*,
381 F.3d 391, 397 (5th Cir. 2004)…………………………………………..12

*Tennessee v. Garner*,
471 U.S. 1, 7, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1(1985)……………….....12, 13, 22

*Bazan ex. Rel v. Hidalgo County*,
246 F.3d 481, 493 (5th Cir. 2001)…………………………………………..13

*Salazar-Limon v. City of Houston*,
826 F.3d 272, 275 (5th Cir. 2016)…………………………………………..19

*Manis v. Lawson*,
585 F.3d 839, 844 (5th Cir. 2009)…………………………………………..19

*Reese v. Anderson*,
926 F.2d 494, 496 (5th Cir. 1991)…………………………………………..19

*Garcia v. Blevins*,
957 F.3d 596, 601 (5th Cir. 2020)…………………………………………..19

*Powell v. Snook*,
25 F.4th 912, 918 (11th Cir. 2022)……………………………………………………19, 20

*Milstead v. Kibler*,
243 F.3d 157,163 (4th Cir. 2001)…………………………………………………21, 22

*Argueta v. Jaradi*,
86 F.4th 1084, 1092 (5th Cir. 2023)………………………………………………24, 25

*Cole v. Carson*,
935 F.3d 444, 448, 449 (5th Cir. 2019)……………………………………………...25

*Baker v. Putnal*,
75 F.3d at 193, 198……………………………………………………………………25, 26

*Garza v. Briones*,
943 F.3d 740, 745 (5th Cir. 2019)……………………………………………………...26

## **STATUTES & RULES**

28 U.S.C. § 1331……………………………………………………………………3

42 U.S.C. § 1983……………………………………………………………………3

28 U.S.C. § 1291……………………………………………………………………3

FED. R. CIV. P. 56……………………………………………………………………3

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, as the action arises under 42 U.S.C. § 1983.[1] This Court has jurisdiction under 28 U.S.C. § 1291, as this appeal is from a final judgment disposing of all parties' claims.[2]

# STATEMENT OF THE ISSUES

1.   Did the District Court err in granting summary judgment to Officer Hinojosa by resolving factual disputes in favor of Defendants, contrary to the standard under Federal Rule of Civil Procedure 56?

2.   Did the District Court improperly conclude that Officer Hinojosa's use of deadly force was objectively reasonable, despite substantial controverting evidence indicating that Plaintiff Jorge Martinez was surrendering and did not pose an immediate/imminent threat to Officer Hinojosa or anyone else?

3.   Did the District Court err in holding that it was not feasible for Officer Hinojosa to issue a warning before using deadly force, despite evidence suggesting otherwise?

---

[1] ROA.520.
[2] ROA.1120.

4.    Did Martinez identify existing precedent that squarely governed the specific facts at issue, that put Officer Hinojosa on notice that his conduct was unlawful, to establish that his actions were objectively unreasonable, to overcome his claim to qualified immunity?

5.    Did the District Court erroneously dismiss Plaintiff's Monell claim against the City of Laredo, despite evidence of a constitutional violation?

## STATEMENT OF THE CASE

This case arises from an incident that occurred on November 26, 2019, in Laredo, Texas.  On that date at approximately 5:30 a.m., LPD officers responded to a domestic disturbance on Knoll Avenue in Laredo, Texas.  Upon arrival, LPD officers were met with gunfire from Cesar Terrazas, who was using an AR-15 rife. Terrazas fired multiple rounds at responding officers, who returned fire.  In all, over 80 rounds were exchanged.

During the altercation, Terrazas forced his way into Jorge Martinez's home, where Martinez, his mother, and sister were present.  Inside, Terrazas shot Martinez' mother.  Martinez, his mother, and sister, managed to overpower and disarm Terrazas, securing the AR-15 rifle in the process. These facts are undisputed.

After disarming Terrazas, Plaintiff, Jorge Martinez, who was naked, exited his home holding the confiscated rifle in his left hand with the barrel pointed to the

ground, and raising his right hand high above his head in a gesture of surrender.[3] As Martinez exited his home he repeatedly shouted, "I'm not the shooter!"[4] Witnesses Hector Flores and Blanca Hill, who lived in the neighborhood, testified that they clearly heard Martinez shout he was "not the shooter," multiple times.[5]

Officer David Hinojosa arrived on the scene just before the initial barrage of gunfire ended. Video evidence shows that from a distance approximately three shots were fired in Officer Hinojosa's direction.[6] Officer Hinojosa thereafter positioned himself approximately 60 yards away from Martinez' residence, behind a tree.[7] After approximately 5 minutes of silence, Officer Hinojosa observed Martinez exit the home holding a rifle with the barrel pointed to the ground and one armed raised above his head.[8] After Martinez exits the home, Officer Hinojosa shouted to officers at the scene that Martinez was "naked" and that he had a gun.[9]

Video evidence shows that after exiting his home, Martinez stops at the top of his driveway for approximately 5 seconds, apparently waiving for help with his hand above his head.[10] The video then shows Martinez walking quickly, but in a non-

---

[3] ROA.1149, 5:55:53-5:56:08; ROA.1147, 5:55:57–5:56:12; ROA.808-811; ROA.834; ROA.1070-1071; ROA.1067-1068.
[4] ROA.1175-1179.
[5] ROA.1032–1035; ROA.1061-1065.
[6] ROA.1147, 5:51:01-5:51:53.
[7] ROA.1147, 5:51:01–5:56:12; ROA.838-839.
[8] ROA.830, 832, 834, 840; ROA.1147, 5:55:57–5:56:12.
[9] ROA.1147, 5:56:05-5:56:09.
[10] ROA.1149, 5:55:54-5:56:00.

threatening manner, down his driveway.[11]  Despite the fact that Martinez clearly appeared to be surrendering, after Martinez gets to the street in front of his house, Officer Hinojosa, who was approximately 60 yards away from Martinez, shoots Martinez in the abdomen, without warning.[12]

For more than 5 minutes prior to shooting Martinez, no shots were fired and it was silent.[13]  Video evidence shows that approximately 15 seconds elapsed from the time Martinez exits his home to the time he was shot by Hinojosa.[14]  Although Officer Hinojosa admits that he could have issued a warning before shooting Martinez, he testified that he did not warn Martinez because he didn't think Martinez would hear him.[15]  Hinojosa's conduct after the shooting contradicts this assertion. Specifically, from the same position, Hinojosa not only warned the officers present at the scene that Martinez was nude and was holding a weapon, but he also issued a post-shooting warning to Martinez not to move or he would "shoot [him]again."[16]

Martinez survived the shooting and subsequently filed this action under 42 U.S.C. § 1983, asserting claims for excessive force in violation of the Fourth Amendment and municipal liability under Monell.[17]  Plaintiff, Jorge Martinez,

---

[11] ROA.1149, 5:56:00-5:56:06.
[12] ROA.839; ROA.1149, 5:55:54-5:56:08.
[13] ROA.1147, 5:51:54-5:56:06; ROA.860.
[14] ROA.1147, 5:55:57-5:56:12; ROA.1149, 5:55:54-5:56:08
[15] ROA.836, 837.
[16] ROA.1147, 5:56:05-5:56:37
[17] ROA.520.

alleges that Officer Hinojosa violated his Fourth Amendment right to be free from unreasonable seizure by employing deadly force without justification or sufficient warning. Plaintiff also asserts municipal liability under Monell for the City's failure to train, supervise, and discipline its officers, as well as its ratification of the unconstitutional conduct.

On November 03, 2023, Defendants moved for summary judgment, with Hinojosa asserting qualified immunity and the City challenging the sufficiency of Plaintiff's Monell claims.[18]   The District Court granted summary judgment for Officer Hinojosa, concluding that his actions were objectively reasonable and that no constitutional violation occurred.[19]   The Court further dismissed the Mondell claims, reasoning that without an underlying constitutional violation, there could be no liability against the City.[20]

Martinez now appeals the District Courts decision arguing that the District Court improperly resolved key factual disputes in favor of Defendants and ignored contradictory evidence raising genuine questions of material fact.

This Court should reverse the District Court's decision for the following reasons:

---

[18] ROA.665.
[19] ROA.1073.
[20] ROA.1073.

1. There is a genuine issue of material fact as to whether it reasonably appeared to Officer Hinojosa that Martinez was surrendering at the time he shot Martinez;

2. There is a genuine issue of material fact as to whether Martinez started to raise the gun toward Hinojosa or made any other movement that could be interpreted as a furtive gesture or imminent threat;

3. There is a genuine issue of material fact as to whether Officer Hinojosa heard Martinez proclaim that he was "not the shooter";

4. There is a genuine question of material fact as to whether Officer Hinojosa reasonably perceived Martinez as an immediate threat;

5. The evidence raises a material fact question as to whether it was feasible to issue a warning before using deadly force and whether Hinojosa acted reasonably in choosing not to do so; and

6. There is a genuine issue of material fact as to whether the Court erred in dismissing Plaintiff's Monell claims against the City because there are genuine issues of material fact as to whether a constitutional violation occurred.

# SUMMARY OF THE ARGUMENT

The District Court's summary judgment ruling should be reversed.  The Court improperly resolved factual disputes in Defendant's favor and failed to view the evidence in a light most favorable to Plaintiff.  The evidence demonstrates genuine issues of material fact regarding whether Hinojosa reasonably perceived Martinez as an imminent threat and whether it was feasible for Hinojosa to issue a warning before using deadly force.  Plaintiff acknowledges the threat present anytime someone is holding a gun, however, there is substantial summary judgment evidence that Martinez did not pose a sufficiently imminent threat that it justified the use of deadly force without a waring.

Specifically, video evidence and witness testimony establish that Martinez exited his home with one hand raised above his head and holding a rife with its barrel pointed to the ground with the other.[21]  After Martinez exits his home, he repeatedly shouted "I'm not the Shooter!"[22]  Up until the time Hinojosa shot Martinez, he made no sudden or threatening movements.[23]  At no time is Martinez seen raising the weapon or making any movement which would suggest to a reasonable officer that

---

[21] ROA.1149, 5:55:53-5:56:08; ROA.1147, 5:55:57–5:56:12; ROA.808-811; ROA.834; ROA.1070-1071; ROA.1067-1068.
[22] ROA.1175-1179; ROA.1032-1035; ROA.1061-1065.
[23] ROA.1149, 5:55:53-5:56:08

he had an intent to use the gun.  Rather, the video evidence shows behavior that is consistent with someone who is surrendering.

The District Court granted Officer Hinojosa's motion to dismiss.[24]  The District Court found that the summary judgment evidence showed that Officer Hinojosa reasonably perceived an immediate threat justifying the use of deadly force, and that Office Hinojosa reasonably perceived that a warning was not feasible under the circumstances.  However, in making its ruling, the District Court improperly weighed the evidence in support of its findings and failed to give proper weight to the evidence controverting the evidence relied on by the Court in rendering its decision.

The District Court's order dismissing Plaintiff's Monell claims should also be reversed.  The District Court dismissed Plaintiff's Monell claims as it found that without a constitutional violation, there can be no municipal liability.[25] The Court based its decision on its finding that Officer Hinojosa reasonably perceived an imminent threat justifying the use of deadly force and that Hinojosa reasonably perceived that it was not feasible to have issued a warning.  Because the summary judgment evidence creates a genuine issue of material fact as to these issues, the District Court's decision should be reversed.

---

[24] ROA.1073.
[25] ROA.1073.

# ARGUMENT

The District Court granted Officer Hinojosa's motion to dismiss. The District Court found that the summary judgment evidence showed that Officer Hinojosa reasonably perceived an immediate threat justifying the use of deadly force, and that Officer Hinojosa reasonably perceived that a warning was not feasible under the circumstances. However, in reaching its decision, the District Court improperly weighed the evidence in support of its findings and ignored the summary judgment evidence controverting the evidence and findings relied on by the Court in rendering its decision.

## I.    Standards of Review

### a. Summary Judgment

This Court reviews the district court's ruling granting summary judgment *de novo*. *Branton v. City of Dallas*, 272 F.3d 730, 738 (5th Cir. 2001). Summary Judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999). The Movant must "demonstrate the absence of a genuine issue of material fact." *Id. citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 160 S. Ct. 2548, 2553 (1986).

11

A dispute about a material fact is considered "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Clark v. Wright National Flood Insurance Company*, 380 F.Supp.3d 523 (2019). The non-moving party can defeat a motion for summary judgment by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact or showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party. *Clark v. Wright National Flood Insurance Company*, 380 F.Supp.3d 523 (2019).

In ruling on a motion for summary judgment the court must consider the record as a whole, reviewing all pleadings, depositions, affidavits, and admissions, and drawing all reasonable inferences in favor of the party opposing the motion. *Muniz v. Quarterman*, Not Reported in F.Supp.2d (2007).

### b. Qualified Immunity

It has long been established that "It is objectively unreasonable to use deadly force 'unless it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious bodily injury to the officer of others." *Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). The threat cannot be a mere possibility, but rather must be "immediate" to justify the use of deadly force. *Garner*, 471 U.S. at 11. The Fifth Circuit has mandated

that the "excessive force inquiry is confined to whether the [officer] was in danger at the moment of the treat that resulted in" the use of deadly force. *Bazan ex. Rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 493 (5th Cir. 2001).

Under the Fourth Amendment, the Supreme Court has established that, when feasible, police officers must give a warning before using deadly force. *Garner* at 7. In Garner, the Court held that the use of deadly force to prevent the escape of a fleeing suspect is unreasonable unless the suspect poses an immediate threat of death or serious bodily harm, and, if feasible, some warning has been given. *Id*. This principle has been extended to a variety of situations involving the use of deadly force.

The District Court granted Officer Hinojosa's motion to dismiss.[26]   The District Court found that the summary judgment evidence showed that Officer Hinojosa reasonably perceived an immediate threat justifying the use of deadly force, and that Officer Hinojosa reasonably perceived that a warning was not feasible under the circumstances.  However, in reaching its decision, the District Court improperly weighed the evidence in support of its findings and ignored the summary judgment evidence controverting the evidence and findings relied on by the Court in rendering its decision.

---

[26] ROA.1073.

## II.     Questions of Fact for the Jury on Hinojosa's claim for Qualified Immunity

### a. Genuine Question of Material Fact Whether Officer Hinjosa Reasonably Perceived an Immediate Threat Justifying Use of Deadly Force.

The District Court found that officer Hinojosa reasonably perceived an imminent threat justifying the use of deadly force. In doing so, the Court asserts that when the Plaintiff exited his home, he did so "abruptly".[27] The Court further asserted that the video evidence showed that Martinez moved quickly between two cars parked in the driveway before entering the street and that he was moving in a "frantic manner."[28]   The Court found that the dash cam video showed that the plaintiff's behavior was "erratic".[29]

The Court relies on Hinojosa's deposition testimony that he believed the Plaintiff's firearm "could have come up immediately," when "he turned around" and that he saw the weapon move and "that is when [he] fired."[30]

In rendering its decision, the Court did not properly consider the summary judgment evidence showing that Martinez was surrendering when he was shot and the evidence establishing a question of fact as to whether Officer Hinojosa

---

[27] ROA.1073 at p.8.
[28] ROA.1073 at p.10.
[29] ROA.1073 at p. 16.
[30] ROA.1070 at p.9.

14

reasonably perceived Martinez as an immediate threat of death of serious bodily injury.

The summary judgment evidence produced by Plaintiff shows the following:

a. When Martinez exits his home, he walks out with one hand raised above his head and holding a firearm with its barrel pointed to the ground with the other;[31]

b. After Martinez exits the home, Officer Hinojosa warns the officers present at the scene that Martinez is "naked" and that he has a gun;[32]

c. After Martinez exits the home, he repeatedly shouted "I'm not the shooter!"[33];

d. Hector Flores and Blanca Hill, who was inside her house, both heard Martinez shout "I'm not the Shooter," multiple times[34];

e. Hector Flores testified that he was further away from Martinez than Officer Hinojosa, and the Hinojosa should have been able to hear Martinez[35];

f. Although inaudible, Martinez can be heard shouting what sounds like "I'm not the shooter!" on Officer Hinojosa's body-cam system[36];

---

[31] ROA.1149, 5:55:53-5:56:08; ROA.1147, 5:55:57–5:56:12; ROA.808-811; ROA.834; ROA.1070-1071; ROA.1067-1068.
[32] ROA.1147, 5:56:05-5:56:09.
[33] ROA.1175-1179.
[34] ROA.1032-1035; ROA.1061-1065.
[35] ROA.1040-1041.
[36] ROA.1147, 5:55:55-5:55:57

g. When Martinez reaches the top the driveway, with one hand still raised above his head and the other holding the gun with the barrel pointed to the ground, he stops for at least 5 seconds, waiving for help[37];

h. After stopping at the top of drive way for approximately 5 seconds, Mr. Martinez walks quickly in between two cars parked in the driveway and enters the public street[38];

i. When Martinez enters the street, he still has one hand raised up above his head and is holding the gun with the barrel pointed to the ground with the other (*Ibid.*);

j. After Martinez enters Knoll Avenue, he turns around toward the front of his house still with one arm raised above his head and holding the gun with the barrel pointed to the ground with the other (*Ibid.*);

k. From approximately 60 yards away behind a tree, Officer Hinojosa shoots Martinez, without warning[39];

l. Immediately after shooting Martinez, Officer Hinojosa warns Martinez that if he moves, he will "shoot [him] again." (*Ibid.*);

m. From the time Martinez exits his home to the time he is shot; Martinez does not raise the firearm and does not make any sudden movements or

---

[37] ROA.1149, 5:55:54-5:56:00.
[38] ROA.1149, 5:56:00-5:56:08.
[39] ROA.1147, 5:56:00-5:56:12.

furtive gestures that can reasonably be interpreted as an intention by Martinez to use the gun. (*Ibid.*).

Contrary to the Court's findings, the video evidence shows that Martinez was not acting frantically or erratically, as the court suggested, and did not make any sudden movements or attempt to raise the gun in any way. Rather, the evidence shows that Martinez was surrendering. Although Martinez can be seen turning around towards the front of his house before he is shot, the video evidence clearly shows that Martinez did not make any movements that would suggest to a reasonable officer that he was about to raise the gun or had an intention of using it.

In rendering its decision, the Court relied in part on Officer Hinojosa's testimony that he did not hear the Plaintiff shout, "I'm not the shooter!"[40] The Court, however, did not give weight to the evidence controverting Officer Hinojosa's statement. First, the evidence showed that in the moments before the shooting, it was silent for approximately 5 minutes.[41] Further, although inaudible, you can hear the plaintiff shouting on Officer Hinojosa's Body Camera system. (*Ibid.*). Hinojosa's assertion is also inconsistent with the evidence showing that Hector Flores, who was further from Martinez than Officer Hinojosa, and Blanca Hill, both clearly heard Martinez state that he was not the shooter, multiple times[42]. This

---

[40] ROA.1073 at p. 11-12.
[41] ROA.1147, 5:51:54-5:56:06.
[42] ROA.1032-1035; ROA.1061-1065; ROA.1040-1041.

evidence supports the plausibility that Plaintiff's declarations were audible to Hinojosa, raising a genuine issue of material fact as to whether Officer Hinojosa ignored critical context before shooting Martinez. The Court, however, noted that "what the neighbors were able to hear and understand is not *determinative* of what information was known by or available to Officer Hinojosa" and found that Hinojosa's statement that he didn't hear the Plaintiff was "uncontroverted."[43]

In finding that Officer Hinojosa' reasonably perceived Martinz an immediate threat, the Court emphasized that before the shooting, video evidence shows Martinez turning in Officer Hinojosa's direction. The Court cites Officer Hinojosa's testimony that he believed the gun "could have come up immediately," when Martinez "turned around" and that he saw the weapon move and "that is when [he] fired."[44]

In support of its finding, the Court cites to a line of case where the officer's use of deadly force was justified against suspects that appeared to be reaching for a gun and/or turning in the officer's direction while holding a gun, when the officer shot the suspect.[45] However, the cases cited by the Court are distinguishable from the facts in the case at hand. Specifically, in the cases relied on by the Court, each

---

[43] ROA.1073 at p. 12.
[44] ROA.1070 at p. 9.
[45] ROA.1070 at p. 13.

of the suspects had ignored multiple warning or commands, and were either reaching for a gun or appeared to be reaching for a gun. *See, Salazar-Limon v. City of Houston*, 826 F.3d 272, 275 (5th Cir. 2016) (Police officer's use of deadly force was not clearly excessive or unreasonable, and thus, was entitled to qualified immunity considering the totality of circumstances, including suspects resistance, intoxication, and his disregard for the officer's orders); *See also, Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (Police officer did not use excessive force in violation of Fourth Amendment where suspect, in defiance of officers' contrary orders, reached under the seat of his vehicle and appeared to retrieve an object the officer reasonably believed to be weapon.); *See also, Reese v. Anderson*, 926 F.2d 494, 496 (5th Cir. 1991) (Officer was justified in using deadly force after suspect in vehicle repeatedly reached down below police officer's sight line in defiance of police officer's order to raise his hands and officer could reasonably believe that passenger had retrieved a gun and was about to shoot.); *See also, Garcia v. Blevins*, 957 F.3d 596, 601 (5th Cir. 2020) (Police officer was entitled to qualified immunity after using deadly force against suspect when the officer ordered the suspect to put down the weapon but the suspect refuse to do so.).

Unlike the cases cited by the Court, Martinez was not resisting or attempting to flee, and was not acting in a manner suggestive of his intent to cause harm. Rather, the summary judgment evidence shows that Martinez was surrendering. Further, it

is undisputed that Officer Hinojosa could have issued a warning before using deadly force, but chose not to do so.[46]

In granting Defendant's motion, the Court found that Officer Hinojosa reasonably perceived that it was not feasible to give a warning before shooting Martinez.[47]  In doing so, the Court relied on *Powell v. Snook*, 25 F.4th 912 (11th Cir. 2022).  In *Powell*, the Plaintiff (who was an innocent third party) walked out onto the driveway of his home holding a loaded pistol in his right hand. *Id.* at 918. After walking about 15 steps at a normal pace, the Plaintiff stopped and turned toward the officer who was positioned in the dark by the front door. *Id.* After the Plaintiff raised the gun toward the officer to about hip height, the officer shot the Plaintiff, without warning. *Id*. While the mere presence of a gun is not enough to warrant the use of deadly force, the Court in *Powell* noted that the "law does not require officers in a tense and dangerous situation to wait until a suspect uses a deadly weapon to act to stop the suspect." *Id*.

*Powell* is distinguishable from the facts in the case at hand. In *Powell*, the officer was positioned near the suspect by the front door.  In this case, Officer Hinojosa was positioned approximately 60 yards away from Martinez taking cover behind a tree. Thus, the immediacy of the threat was much greater in *Powell*.

---

[46] ROA.835-837.
[47] ROA.1070 at 16.

Further, it was undisputed in *Powell* that the suspect turned toward the officer and raised his gun in the officer's direction to hip height. *Id.* at 918. In this case, video evidence shows that Martinez was surrendering and did not raise the gun in Officer Hinojosa's direction.[48]  Rather, the evidence shows that Martinez was pointing the gun down to the ground when he was shot. (*Ibid*.). This is consistent with Officer Hinojosa's testimony where he stated that he believed Martinez "*could* have raised the gun", acknowledging that Martinez did not. [emphasis added].[49]

The Court also relies on *Milstead v. Kibler, 243 F.3d 157 (4th Cir. 2001)*.  In *Milstead*, the Court found that Officer Kibler was entitled to qualified immunity when he used deadly force, without warning, against a suspect who was "charging" at him.  *Milstead* at 163.  Specifically, in *Milstead*, officers were responding to a report that occupants of residence were being attacked by someone armed with a gun.  *Id*.   After kicking the front door open, officers saw two figures wrestling on the floor when one of them pointed a gun at one of the officers and fired four shots. *Id*. After Officer Kibler heard the shots, he saw one of the other officers fall to the ground, although he was not shot.  Immediately thereafter, Officer Kibler retreated outside to the corner of the house. *Id*. Officer Kibler then heard someone yell that he was going to "kill you all." *Id*. About 15 seconds later, someone came "crashing"

---

[48] ROA.1149, 5:55:54-5:56:09
[49] ROA.1070 at 9.

through the door "in a run" and turned toward officer Kibler. *Id*. Kibler thereafter fired two shots toward the suspect, who it turns out was not the assailant and was unarmed. *Id*.

This case is also distinguishable from the facts in the case at hand. In *Kibler*, the officer was in close proximity to the suspect who came "crashing out" of the house "in a run." *Id*. at 163. Even though it turns out that the suspect was not the assailant and was not carrying a gun, it was reasonable under the circumstances to believe that the threat was immediate, and that a reasonable officer could believe that a warning was not feasible. In this case, Martinez did not charge toward Hinojosa, and Hinojosa was not in close proximity to Martinez when he used deadly force. Rather, Hinojosa was taking cover approximately 60 yards away from Martinez.

When considering the threat of physical harm to an officer or others, a court must assess the level and immediacy of the threat. Specifically, the threat cannot be a mere possibility, but rather must be "immediate" to justify the use of deadly force. *Garner*, 4471 U.S. at 11. These factual disputes, central to whether Officer Hinojosa reasonably perceived Martinez to be an immediate threat and thus whether the use of force was objectively reasonable, should have been resolved by a jury, not summarily by the Court.

Construing the evidence in a light favorable to the Plaintiff, and resolving all doubts in his favor, Martinez has established a genuine issue of material fact as to whether Martinez posed an imminent threat justifying the use of deadly force.

### b. Genuine Question of Material Fact Whether it was Feasible for Hinojosa to have issued a warning before using deadly force.

The District Court erred in finding that it was not feasible for Officer Hinojosa to issue a warning before shooting Martinez.  In this case, it is undisputed that Officer Hinojosa did not issue a warning before shooting Martinez.  It is also undisputed that Officer Hinojosa had sufficient time before shooting Martinez to have issued a warning. Officer Hinojosa testified that he could have issue a warning but didn't because he didn't think Martinez would hear him.[50] Based on this statement, the Court concluded that it was reasonable for Officer Hinojosa to believe that a warning was not feasible.[51]

In finding that Officer Hinojosa reasonably perceived that it was not feasible to give a warning, the Court did not sufficiently weigh the evidence that controverted Officer Hinojosa's assertion.  First, Officer Hinojosa's claim that he did not believe that Martinez would hear him is inconsistent with evidence that from the same position where he shot Martinez, Hinojosa warned officers that Martinez was

---

[50] ROA.835-837.

[51] ROA.1070 at 16.

23

"naked" and that he had a gun.[52] Hinojosa's assertion is also inconsistent with evidence showing that from the same position, he issued a post-shooting warning to Martinez that if he moved, he would "shoot [him] again".[53]   These statements demonstrate that Hinojosa had the ability to issue warnings and undermine his claim that he believed Martinez would not have heard him.   Because the statement is controverted by the summary judgment evidence, the court reliance on Hinojosa's statement to find that it was not feasible for him to have given a warning is improper and failed to construe the facts in favor of the non-movant.

In finding that Officer Hinojosa reasonably believed that it was not feasible to issue a warning, the Court cites *Argueta v. Jaradi*, 86 F.4th 1084 (5th Cir. 2023).   In *Argueta*, Officer Jaradi shot an unarmed suspect who was clutching his right arm to his side as he fled "at top speed." *Id*. at 1092.   It was shown by the evidence that as Argueta ran, he swung only his left arm, keeping his right arm "purposefully and unnaturally" pressed against his side. *Id*.   Officer Jaradi testified that he believed Argueta was armed and was "concerned that he could not, if necessary, react with his handgun in time to stop an attack."   *Id*.   In finding that it was reasonable for Jaradi to have perceived an imminent threat, the Court reasoned that "Argueta's

---

[52] ROA.1147, 5:55:57-5:56:12.
[53] ROA.1147, 5:56:22-5:56:37.

clutching his right arm to his side as he fled at top speed" was a furtive gesture tantamount to reaching for a weapon. *Id.*

*Argueta* is distinguishable from the case at hand as Plaintiff has produced evidence establishing a question of fact as to whether Martinez made any sudden movements or furtive gestures which would indicate to a reasonable officer that Martinez was an imminent threat.

Contrary to the Court's holding, the case at hand is similar to the 5th Circuit cases where it was found that officers who shot armed but non-threatening suspects, without warning when it was feasible to do so, were <u>not</u> entitled to qualified immunity. *See, Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019). In *Cole*, officers shot Ryan Cole, who they learned was potentially suicidal and had threatened to shoot anyone who tried to take his gun. *Id.* at 448. When Cole was shot, he was in an "open outdoor area," pointing his gun at his own head, facing away from the officers. *Id.* As in the case at hand, there was conflicting evidence as to whether Cole was making any threatening or provocative gestures. *Id.* at 448-49. The Court held that fact issues remained as to whether officers had time to give a warning before shooting Cole, and that it was clearly established that the officer's use of deadly force, without warning, in a situation where officers were not in immediate danger, violated the Fourth Amendment. *Id.*

In *Baker v. Putnal*, a police officer was responding to a report of a shooting

on a crowded beach involving an armed and dangerous suspect who had been reported to be carrying a "pistol-gripped shotgun." 75 F.3d at 193. As the officers approached the vehicle that they were told contained the "shooters", Baker, who was sitting in the passenger's seat of the vehicle, turned toward the officers. *Id*. One of the officers responded by shooting Baker, without warning. *Id*. The Firth Circuit reversed the district court's grant of summary judgment and held that "chaos on the beach and [plaintiff's] mere turn" were "not compelling reasons to find that [the] use of deadly force was not excessive as a matter of law." *Id*. at 198.

The summary judgment evidence produced established a question of fact as to whether it was feasible for Hinojosa to have issued a warning before shooting Martinez. By accepting Defendants subjective reason for not issuing a warning, not only did the Court improperly weigh the evidence, but it also failed to apply the proper standard in evaluating Defendant's conduct. *See, Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019) (At their core, excessive force claims involve an evaluation of the "totality of circumstances" to determine if the use of force was "objectively unreasonable."). The Court should have considered whether, under an objective standard, it was feasible under the circumstances to give a warning before shooting Martinez. The District Court's acceptance of Officer Hinojosa's subjective reasoning undermines the constitutional requirement that officers must act reasonably under the circumstances.

Construing the evidence in a light favorable to the Plaintiff, and resolving all doubts in his favor, Martinez has established a genuine issue of material fact as to whether Martinez posed a sufficiently imminent threat justifying the use of deadly force without warning.

### III.    Monell Claims against the City of Laredo

The District Court's order dismissing Plaintiff's Monell claims should also be reversed.  The District Court dismissed Plaintiff's Monell claims as it found that without a constitutional violation, there can be no municipal liability.[54] The Court based its decision on its finding that Officer Hinojosa reasonably perceived an imminent threat justifying the use of deadly force and that it was not feasible for Hinojosa to have issued a command or warning.  Because the summary judgment evidence creates a genuine issue of material fact as to these issues, the District Court's decision should be reversed.

## CONCLUSION

For the foregoing reasons, Jorge Martinez, respectfully request that this Court reverse the district court's order granting Defendants' Motion for Summary Judgment asserting Hinojosa's entitlement to qualified immunity and Motion for

---

[54] ROA.1073.

Judgment on the Pleadings on Plaintiff's Monell claim and remand this case to the

district court for trial on the merits.

Electronically signed on this the 4th day of December, 2024.

Respectfully submitted,

GRIFFITH LAW GROUP
4228 North McColl
McAllen, Texas 78504
(956) 971-9446
(956) 971-9451 – Facsimile

By:    */s/ DAVID L. FLORES*
       **DAVID L. FLORES**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing BRIEF OF APPELLANT will be forwarded to counsel of record through the court's automatic notice of e-filing, as well as by e-mailing an electronic copy, on this the 4th day of December, 2024, addressed as follows:

William McKamie
Lindsey Hale
TAYLOR, OLSON, ADKINS, SRALLA & ELAM, LLP
6000 Western Place, Suite 200
Fort Worth, Texas 76107

/S/David L. Flores

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 5,440 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word software in Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.

/S/David L. Flores