# CASE NO. 24-40535

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### JORGE R. MARTINEZ,
*Plaintiff – Appellant*

**v.**

### OFFICER DAVID HINOJOSA; CITY OF LAREDO,
*Defendants – Appellees*

---

On Appeal from the United States District Court,
for the Southern District of Texas, Case No. 5:20-CV-00075

---

## APPELLEES' BRIEF

WILLIAM M. MCKAMIE, Lead Counsel
Texas Bar No. 13686800
Southern Dist. ID. 13010
*mmckamie@toase.com*
ALICIA K. KREH
Texas Bar No. 24097953
Southern Dist. ID 3327420
*akreh@toase.com*
LINDSEY HALE
Texas Bar No. 24096435
Southern Dist. ID 3499360
*lhale@toase.com*

**TAYLOR, OLSON, ADKINS, SRALLA & ELAM, LLP**
6000 Western Place, Suite 200
Fort Worth, Texas 76107
817-332-2580 Phone
817-332-4740 Fax
**Attorneys for Appellees**

## ORAL ARGUMENT NOT REQUESTED

## CERTIFICATE OF INTERESTED PERSONS

The cause number and style of the case is No. 24-40535, *Jorge R. Martinez v. Officer David Hinojosa; City of Laredo* (Civil Action No. 5:20-CV-75, Southern District of Texas, Laredo Division). The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

| **Plaintiff-Appellant** | **Attorneys for Plaintiff-Appellant** |
|---|---|
| Jorge R. Martinez | David L. Flores |
| | dflores@rgvfirm.com |
| | John R. Griffith |
| | jrg@rgvfirm.com |
| | The Griffith Law Group |
| | 4228 North McColl |
| | McAllen, Texas 78504 |
| | Phone:  956-971-9446 |

| **Defendants-Appellees** | **Attorneys for Defendants-Appellees** |
|---|---|
| Officer David Hinojosa and City of Laredo, Texas | William M. McKamie |
| | mmckamie@toase.com |
| | Alicia K. Kreh |
| | akreh@toase.com |
| | Lindsey Hale |
| | lhale@toase.com |
| | TAYLOR OLSON ADKINS SRALLA & ELAM, LLP |
| | 6000 Western Place, Suite 200 |
| | Fort Worth, Texas 76107 |
| | Phone:  817-332-2580 |

Respectfully submitted,

*/s/ William M. McKamie*
William M. McKamie

## STATEMENT REGARDING ORAL ARGUMENT

Appellees David Hinojosa, in his official and individual capacity, and the City of Laredo, do not request oral argument in this appeal. However, should the Court request oral argument from Appellant, Appellees request the opportunity to participate in oral argument.

# TABLE OF CONTENTS

<u>Page</u>(s)

CERTIFICATE OF INTERESTED PERSONS — 2

STATEMENT REGARDING ORAL ARGUMENT — 3

TABLE OF CONTENTS — 4-5

TABLE OF AUTHORITIES — 6-9

JURISDICTIONAL STATEMENT — 10

ISSUES PRESENTED FOR REVIEW — 11

STATEMENT OF THE CASE AND FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW — 12

SUMMARY OF THE ARGUMENT — 18

STANDARD OF REVIEW — 19

ARGUMENT AND AUTHORITIES — 20

I.   Qualified Immunity — 20

II.  Excessive Force Claim — 22

   A.   Whether Office Hinojosa acted reasonably was correctly determined as a matter of law by the District Court, which correctly relied on video evidence that established the circumstances confronted by Officer Hinojosa — 28

   B.  Officer Hinojosa did not act unreasonably by failing to warn Martinez before firing — 31

III. The District Court correctly dismissed Martinez's municipal liability claims against the City where there was no constitutional violation, and Martinez failed to plead failure to train, supervise and/or ratification theories of liability — 34

   A. Because there was no constitutional violation, Appellant's municipal liability claim must fail — 37

B. Appellant failed to establish any deficient training policy of the City that caused his injury     38

C. Appellant failed to establish any supervisor whose action or inaction caused his injury     39

D. Appellant failed to establish extreme facts condoned by the City that ratified unconstitutional behavior     40

CONCLUSION     42

CERTIFICATE OF SERVICE     43

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32     43

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                              **<u>Page(s)</u>**

*Anderson v. Creighton*,                                                               21
   482 U.S. 635 (1987)

*Ashcroft v. Iqbal*,                                                                       20
   556 U.S. 662 (2009)

*Baker v. Coburn*,                                                                        28
   68 F.4th 240 (5th Cir. 2023)

*Baker v. Putnal*,                                                                    31, 32
   75 F.3d 190 (5th Cir. 1996)

*Bazan v. Hidalgo Cnty.*,                                                               23
   246 F.3d 481 (5th Cir. 2001)

*Betts v. Brennan*,                                                                       28
   22 F.4th 577 (5th Cir. 2022)

*Brown v. Callahan*,                                                              22, 24, 28
   623 F.3d 249 (5th Cir. 2010)

*Burge v. St. Tammany Parish*,                                                          35
   336 F.3d 363 (5th Cir. 2003)

*Bush v. Strain*,                                                                         23
   513 F.3d 492 (5th Cir. 2008)

*Bustos v. Martini Club.*,                                                               20
   599 F.3d 458 (5th Cir. 2010)

*Carnaby v. City of Houston*,                                                           19
   636 F.3d 183 (5th Cir. 2011)

*City of Canton v. Harris*,                                                             38
   489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)

*City of St. Louis v. Praprotnik*,                                                       35
   485 U.S. 112, 108 S. Ct. 915 (1988)

*Cole v. Carson*,                                                                     31, 33
   935 F.3d 444 (5th Cir. 2019)

*Collie v. Barron*,                                                                       26
   747 Fed. App'x 950, 952 (5th Cir. 2018)

*Collier v. Montgomery*,                                                                 22
   569 F.3d 214 (5th Cir. 2009)

*Collins v. Ainsworth,*                                                    21
    382 F.3d 529 (5th Cir. 2004)

*Crane v. City of Arlington,*                                              28
    50 F.4th 453 (5th Cir. 2022)

*DeVoss v. SW Airlines Co.,*                                              19
    903 F.3d 487 (5th Cir. 2018)

*Doe AW v. Burleson Cnty.,*                                              19
    86 F.4th 172 (5th Cir. 2023)

*Doe v. Taylor Indep. Sch. Dist.,*                                        39
    15 F.3d 443 (5th Cir. 1994)

*Estate of Shaw v. Sierra,*                                               23
    366 Fed. App'x 522 (5th Cir. 2010)

*Fraire v. City of Arlington*                                             36
    957 F.2d 1268 (5th Cir. 1992)

*Garrett v. City of Houston, Tex.,*                                       36
    102 Fed. App'x 863 (5th Cir. 2004)

*Garz v. Escobar,*                                                        37
    972 F.3d 721 (5th Cir. 2020)

*Goodson v. Corpus Christi,*                                           20, 21
    202 F.3d 730 (5th Cir. 2000)

*Graham v. O'Connor,*                                            22, 23, 24, 28
    490 U.S. 386 (1989)

*Grandstaff v. City of Borger,*                                           40
    767 F.2d 161 (5th Cir. 1985)

*Green v. City of Mission,*                                               25
    No. 7:18-CV-49, 2019 WL 3217033, at *23 (S.D. Tex. July
    17, 2019)

*Guerra v. Bellino,*                                                      25
    703 Fed. App'x 312 (5th Cir. 2017)

*Harlow v. Fitzgerald,*                                                   20
    457 U.S. 800 (1982)

*Hernandez v. Mesa,*                                                      27
    582 U.S. 548, 137 S. Ct. 2003, 198 L. Ed. 2d 625 (2017)

*Hughes v. Tobacco Inst., Inc.,*                                          20
    278 F.3d 417 (5th Cir. 2001)

*Ikerd v. Blair*,                                                                  23
    101 F.2d 430 (5th Cir. 1996)

*Johnson v. Deep East Texas Reg'l Narcotics Trafficking Task*        35, 36
*Force*,
    379 F.3d 293 (5th Cir. 2004)

*Macias v. Watkins*,                                                              28
    No. 23-40580, 2024 WL 3427047, at *2 (5th Cir. July 16,
    2024)

*Malley v. Briggs*,                                                               21
    475 U.S. 335 (1986)

*McClendon v. City of Columbia*,                                            22, 23
    305 F.3d 314 (5th Cir. 2002)

*McConney v. City of Houston*,                                                  37
    863 F.2d 1180 (5th Cir. 1989)

*Peña v. City of Rio Grande City*,                                              38
    879 F.3d 613 (5th Cir. 2018)

*Peterson v. City of Fort Worth*,                                          34, 37, 41
    588 F.3d 838 (5th Cir. 2009)

*Pineda v. City of Houston*,                                                    37
    291 F.3d 325 (5th Cir. 2002)

*Piotrowski v. City of Houston*,                                                34
    237 F.3d 567 (5th Cir. 2001)

*Ramirez v. Knoulton*,                                                        26, 31
    542 F.3d 124 (5th Cir. 2008)

*Rivera v. Houston Indep. Sch. Dist.*,                                          34
    349 F.3d 244 (5th Cir. 2003)

*Romero v. Brown*,                                                            20
    937 F.3d 514 (5th Cir. 2019)

*Salazar v. Molina*,                                                            19
    37 F.4th 278 (5th Cir. 2022)

*Sanders-Burns v. City of Plano*,                                             39
    594 F.3d 366 (5th Cir. 2010)

*Saucier v. Katz*,                                                            21, 23
    533 U.S. 194, 197 (2001)

*Scott v. Harris*,                                                        19
    550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686
    (2007)

*Scott v. United States*,                                                22
    426 U.S. 128 (1978)

*Shaw v. Villanueva*,                                                    20
    918 F.3d 414 (5th Cir. 2019)

*Shepherd v. City of Shreveport*,                                        19
    920 F.3d 278 (5th Cir. 2019)

*Smith v. Brenoettsy*,                                                   39
    158 F.3d 908 (5th Cir. 1998)

*Snyder v. Trepagnier*,                                               20, 40
    142 F.3d 791 (5th Cir. 1998)

*Tennessee v. Garner*,                                                   31
    471 U.S. 1 (1985)

*Valencia v. Wiggins*,                                                   22
    981 F.2d 1440 (5th Cir. 1993)

*Williams v. Luna*,                                                      34
    909 F.2d 121 (5th Cir. 1990)

*World Wide St. Preachers Fellowship v. Town of Columbia*,                40
    591 F.3d 747 (5th Cir. 2009)

*Young v. Bd. of Supervisors*,                                           40
    927 F.3d 898 (5th Cir. 2019)

*Zarnow v. City of Wichita* Falls,                                     38, 39
    614 F.3d 161 (5th Cir. 2010)

**Other Authorities**                                               **Page(s)**

28 U.S.C. § 1291                                                         10
28 U.S.C. § 1331                                                         10
28 U.S.C. § 1334                                                         10
42 U.S.C. § 1983                                                     *Passim*
Fed. R. Civ. P. 12(c)                                                 17, 19
Fed. R. Civ. P. 56(a)                                                    19

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction under 28 U.S.C. § 1291 because Martinez appeals the district court's order and final judgment dismissing his claims. ROA.1073-1093.

Martinez timely filed his notice of appeal in the Southern District of Texas, Laredo Division, on August 15, 2024.  ROA.1094.

## ISSUES PRESENTED FOR REVIEW

1.  Whether the District Court correctly granted Officer Hinojosa's Motion for Summary Judgment and dismissed Appellant's claims for violation of his Fourth and Fourteenth Amendment rights, *i.e.*, his excessive force claims where the summary judgment video evidence shows Office Hinojosa's actions were objectively reasonably in the midst of an active shooter situation.

2.  Whether the District Court correctly granted Appellees' Motion for Judgment on the Pleadings and dismissed Appellant's claim against the City for failure to supervise or discipline its officer, and for ratifying unconstitutional conduct pursuant to 42 U.S.C. § 1983 for failure to plead sufficient facts to state a municipal liability claim when no constitutional violation occurred.

## STATEMENT OF THE CASE AND FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW

The following facts are admitted and established by the pleadings. At approximately 5:30 a.m. on November 26, 2019, members of the Laredo Police Department were called out to 127 Knoll Avenue, Laredo, Texas, for a domestic disturbance and shots were fired. Upon arrival, the officers were met with a barrage of gunfire from an AR-15 style rifle by Cesar Terrazas. ROA.524, para. 19. Officers returned fire. ROA.524, para. 20. Cesar Terrazas made his way into the residence at 127 Knoll Avenue where Martinez, his sister, and mother live. ROA.524, para. 20. Terrazas shot and wounded Martinez's mother, Elizabeth Perez, and Martinez, his sister, and his mother eventually overpowered and disarmed Terrazas. ROA.524, para. 21. After Martinez disarmed Terrazas, he exited the residence holding the rifle. ROA.525, para. 23. After Martinez exited his home and entered the street, Officer Hinojosa fired a shot which hit Martinez in his abdomen, causing him serious injury. ROA.526, para. 27. Officer Hinojosa was acting in the course and scope of the authority granted to him by the City and the State of Texas as a City police officer at all times relevant to the shooting incident. ROA.532, para. 49.

The following additional facts were ascertained from discovery:

Officer Hinojosa responded to a call for assistance and was informed that shots were fired. ROA.724, 727-28, 760. After arriving at the scene, numerous shots

were fired, even in Hinojosa's direction. ROA.730-31, 760. He also knew that a fellow officer had been shot. ROA.760. He did not see the shooter, and did not obtain a description of the shooter over his radio, including whether they were naked or clothed. ROA.748, 760. He was unaware that the shooter had entered Martinez's home. ROA.740.  He turned his radio down because the battery was low, and thus it was beeping, and he did not want to give away his position to the shooter. ROA.754.

Officer Hinojosa could not hear or understand what Martinez was saying when he exited the residence. ROA.742. He observed a naked individual carrying an AR-15. ROA.742-43, 749, 760. He did not believe it was feasible, under those circumstances, to give a warning as he did not believe Martinez would have been able to hear him. ROA.742. Martinez testified that he removed the magazine from the rifle before exiting the residence, but it was still in his hand, and that he did not pull the charging handle such that there was a round still in the chamber. ROA.699-701.  Martinez also admits that once he reached the street, he turned to the south toward Officer Hinojosa. ROA.712-13. Officer Hinojosa testified that he observed Martinez move the rifle as he turned and fired out of concern for officer safety. ROA.750, 760.

The video evidence supports these facts. Despite Martinez's assertion that this was not an event that required a split-second decision, or that there were several minute intervals between shootings, the video supports that this was a highly

dangerous situation in which the lives of the officers and public were in danger, requiring split second decision-making from the officers on scene.

The timeline established by the dash camera recording for Unit 1604 shows the following:

- 5:53:50 radio dispatch advises that multiple shots had been fired and an officer had been shot;

- 5:54:05 vehicle arrives on scene;

- 5:55:35 radio dispatch can be heard stating the suspect is wearing all black;

- 5:55:55 an individual, who we now know is Martinez, can be seen exiting the house and running or moving quickly toward the street;

- 5:56:05 the individual enters the street and turns;

- 5:56:08 shots are fired at who we now know is Martinez.

ROA.682.

Officer Hinojosa's body camera recording depicts the following events:

- 5:50:58 Officer Hinojosa arrives on scene and exits his vehicle;

- 5:51:03 – 5:51:05 shots are fired;

- 5:51:13 "shots fired" heard over the radio;

- 5:51:19 additional shots are fired;

- 5:51:23 "shots fired" heard over the radio;

- 5:51:33 Officer Hinojosa's radio chirps;

- 5:51:53 shots are fired;

- 5:52:04 shots are fired;

- 5:52:10 Officer Hinojosa changes his position;

- 5:52:20 Questions regarding whether any officers can see the suspect is heard over the radio;

- 5:52:32 Officer Hinojosa's radio chirps;

- 5:53:22 Officer can be heard over the radio advising he had been shot;

- 5:53:33 Officer Hinojosa's radio chirps and the volume becomes less;

- 5:54:04 "Any eyes on subject?" is heard over the radio;

- 5:54:10 shots are fired;[1]

- 5:55:32 radio chirps;

- 5:55:57[2] indistinguishable yelling can be heard on the body camera recording;

- 5:56:06 – 5:56:09 Officer Hinojosa yells "he's naked and he's got a 32;"

- 5:56:11 Officer Hinojosa shoots Martinez.

ROA.680.

---

[1] Although Martinez repeatedly asserts that no shots were fired and all was quiet for five minutes before Officer Hinojosa shot Martinez, this is contradicted by Martinez's pleadings and deposition testimony that Martinez's mother was shot in their home. ROA.698. These shots were heard by Officer Hinojosa as evidenced on the body camera recording. ROA.680, 5:54:10.

[2] Between the 5:55:32 and 5:55:57 marks, at no time can dispatch's instruction that the suspect is wearing all black be heard on Officer Hinojosa's body camera recording, which was heard at the 5:55:35 mark on the dash camera recording. *Compare* ROA.680 with ROA.682.

On May 5, 202 Martinez filed his lawsuit against Officer David Hinojosa, Officer Anthony Cabello, and Officer Eduardo Benavidez, in their individual and official capacities, and against the City of Laredo, raising an excessive force claim in violation of the Fourth Amendment, a due process claim in violation of the Fourteenth Amendment, municipal liability, state law assault and battery, and state law municipal liability. ROA.17. Appellees filed their answer on June 3, 2020, ROA.48, and filed a motion to dismiss on August 7, 2020. ROA.120. Martinez filed his first and second amended complaints. ROA.182, 228.

Appellees filed their amended motion to dismiss Martinez's second amended complaint. ROA.245. The District Court granted Appellees' motion to dismiss in part, dismissing Martinez's claims against Officers Cabello and Benavidez but permitted Martinez to replead as to his claims against Hinojosa and the City. ROA.318. Martinez filed his third amended complaint on May 6, 2021. ROA.335.

Appellees filed their third amended answer, ROA.353, and then filed their amended motion for judgment on the pleadings August 2, 2022. ROA.382. The District Court granted the motion in part, dismissing Martinez's Fourteenth Amendment claim, denied Appellee's motion to dismiss the excessive force claim against Officer Hinojosa, and dismissed Martinez's municipal liability claim against the City, but permitted Martinez to replead the municipal liability claim. ROA and granted Martinez leave to amend. ROA.512.

Martinez filed his fourth amended complaint on April 22, 2022, which is the live pleading. ROA.520.  Officer Hinojosa and the City filed their Motion for Summary Judgment and Motion for Judgment on the Pleadings Under Rule 12(c) on November 3, 2023, ROA.665, and its First Amended Motion to correct discrepancies within its Motion on February 16, 2024. ROA.929. The District Court issued its Memorandum and Order and Final Judgment holding that the claims against Officer Hinojosa were barred by qualified immunity and dismissing all claims against Officer Hinojosa and the City of Laredo. ROA.1073-93.

Martinez appealed that order. ROA.1096.

## SUMMARY OF THE ARGUMENT

The District Court correctly determined that Martinez failed to clear the hurdle of qualified immunity, that Officer Hinojosa acted reasonably in light of the circumstances he was presented, and that because there was no constitutional violation, there is no policy of the City to violate Martinez's constitutional rights.

Appellees are entitled to qualified immunity because their actions were objectively reasonable in light of established law at the time of their actions and the circumstances in which they acted.

Martinez has failed to state a policy or custom created by a policymaker of the City, failed to state an inefficient training policy of the City, failed to state any action or inaction of a supervisor that caused his injury, and failed to allege an extreme factual situation condoned by the City to support a theory of municipal liability; therefore, Martinez has not alleged a municipal liability claim and the Appellees are entitled to qualified immunity.

## STANDARD OF REVIEW

1.    The standard of review applied to a district court's grant of summary judgment is de novo, "applying the same standards as the district court." *DeVoss v. SW Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018). "Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282-83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A dispute of fact is not 'material' unless its resolution would affect the outcome of the case." *Id.* at 283. Generally, this Court construes all purported facts in "the light most favorable to the non-movant." *Id.* (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). However, when video evidence is available, this Court "is required to 'view the facts in the light depicted by the videotape.'" *Id.* (internal quotations omitted); *Salazar v. Molina*, 37 F. 4th 278, 280 (5th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

2.    A motion under Rule 12(c) for judgment on the pleadings is evaluated using the same standards as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Doe AW v. Burleson Cnty.*, 86 F.4th 172, 175 (5th Cir. 2023). Accordingly, this Court reviews a dismissal on the pleadings de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the

plaintiff." *Bustos v. Martini Club.*, 599 F.3d 458, 461 (5th Cir. 2010); *Romero v. Brown*, 937 F.3d 514, 519 (5th Cir. 2019). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citation omitted).

## ARGUMENT AND AUTHORITIES

### I.    Qualified Immunity

The District Court correctly held that Martinez failed to "clear the hurdle" of qualified immunity. ROA.1078, 1087, 1097. As a governmental employee at the time of the incident, Officer Hinojosa is entitled to qualified immunity from suit available to governmental officials sued in their individual capacities under section 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects an official whose conduct was objectively reasonable even if the conduct infringed upon a constitutional right of the plaintiff. *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Qualified immunity is an immunity from suit, not just from liability. *Harlow*, 457 U.S. at 817-18.

Qualified immunity focuses on what the officer reasonably understood his powers and responsibilities to be at the time he acted. *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998) (noting that the actual circumstances may not justify

the officer's behavior, but he is entitled to immunity if the facts as they appeared to the officer would make the conduct reasonable). The purpose of the qualified immunity inquiry is to recognize that officers can make reasonable mistakes as to how a legal doctrine will apply. *Saucier v. Katz*, 533 U.S. 194, 197 (2001). In fact, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The qualified immunity analysis involves a two-part test. A court must determine whether the plaintiff has alleged a violation of a "clearly established" constitutional right. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004); *accord Saucier*, 533 U.S. at 201. A right is "clearly established" for purposes of qualified immunity if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 482 U.S. 635, 640 (1987). In other words, the relevant inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

In addition to finding a violation of a clearly established right, a defendant is nonetheless entitled to immunity if "[his] conduct was objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 573; *see also Goodson*, 202 F.3d at 736. "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter

of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Importantly, Martinez had the burden of demonstrating the inapplicability of the

qualified   immunity defense by negating <u>both</u> prongs. *McClendon v. City of*

*Columbia*, 305 F.3d 314, 323  (5th Cir. 2002).

## II.    Excessive Force Claim

The Fourth Amendment guarantees citizens the right "to be secure in their

persons…against unreasonable…seizures" of the person. *Graham v. O'Connor,* 490

U.S. 386, 394 (1989). The United States Supreme Court has held that claims that

law enforcement officials used excessive force in the course of making an arrest,

investigatory stop, or other "seizure" of a person are properly analyzed under the

Fourth Amendment's "objective reasonableness" standard, rather than under a

substantive due process standard of the Fourteenth Amendment. *Id.* at 388. The

Fourth Amendment protection against unreasonable seizures may be implicated

during an arrest or other seizure. *Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir.

1993).

To succeed on an excessive force claim, a plaintiff must prove, not merely
allege:

(1)    an injury;

(2)    which resulted directly and only from the use of force that was clearly
excessive to the need; and

(3)    the excessiveness of the force used was clearly unreasonable.

*Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009).

The objective reasonableness of force by a police officer, "depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (citing *Ikerd v. Blair*, 101 F.2d 430, 534-35 (5th Cir. 1996)). In making its determination of objective unreasonableness in an excessive force case, a court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396). Deadly force is a subset of excessive force claims, however, "[w]hen an officer has probable cause to believe that the suspect poses an imminent threat of serious physical harm to the officers or others, deadly force is reasonable." *Estate of Shaw v. Sierra*, 366 Fed. App'x 522, 523-24 (5th Cir. 2010); *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001).

It is a plaintiff's burden to plead and ultimately establish that <u>no</u> reasonable official standing in the shoes of the Officers <u>could</u> have believed the Officers' conduct was lawful. *See Saucier*, 533 U.S. at 199 (emphasis added); *McClendon*, 305 F.3d at 323. The applicable jurisprudence emphasizes that each element turns on the circumstances confronting the officer. The analysis is one of objectivity—the subjective thoughts of an officer are not relevant and is a question of law for the

Court. *Graham*, 490 U.S. at 397 (citing *Scott v. United States*, 426 U.S. 128, 137-139 (1978)); *Brown*, 623 F.3d at 253.

Courts place emphasis on the fact that police officers are forced to make last second judgments in circumstances that are "tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. The use of force "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* at 388. A plaintiff cannot negate qualified immunity by arguing that an officer should have chosen a different type of force.

Here, the factors support the Court's finding that Officer Hinojosa acted reasonably.

First, Officer Hinojosa was responding to an active shooter situation in the dark hours of the morning. Officer Hinojosa arrived while fellow officers were under threat of gunfire. Furthermore, Officer Hinojosa knew that one officer was shot during the interaction ROA.680, 5:53:22; ROA.760. Although Officer Hinojosa learned after the interaction that Martinez was not the active shooter involved, he had no knowledge that Martinez was not the shooter at the time he fired. ROA.748, 760; ROA.680, 5:52:20, 5:54:04 (asking if any officers could see the suspect). Further, a shot had been fired one minute and 45 seconds before Martinez exited the house carrying the AR-15. ROA.680, 5:54:10, 5:55:55. This factor supports the reasonableness of Officer Hinojosa's actions.

Second, Officer Hinojosa's belief that he and his fellow officers were in imminent danger was reasonable. Martinez was carrying a weapon toward officers in an active shooter situation. ROA.699-701, 742-43, 749, 760. Officer Hinojosa had no reason to believe that Martinez was not the active shooter. Martinez himself testified that a bullet remained in the cartridge of the AR-15 and Officer Hinojosa had no basis to believe the weapon was not loaded. ROA.499-701; *see also Green v. City of Mission*, No. 7:18-CV-49, 2019 WL 3217033, at *23 (S.D. Tex. July 17, 2019) ("Courts have found officers were justified in using deadly force when they reasonably believed an object could have been a deadly weapon, even if the object, in fact, did not pose a risk of harm.") By choosing to carry the weapon toward officers and into the street, rather than disposing of the weapon upon exiting the house, Martinez was reasonably perceived as a continuing threat to the officers and people in the neighborhood. A determination "in hindsight that [the suspect] posed no threat . . . is of no consequence to the analysis." *Guerra v. Bellino*, 703 Fed. App'x 312, 317 (5th Cir. 2017).

Further, Officer Hinojosa testified that when Martinez entered the street carrying the AR-15, he turned toward Officer Hinojosa's position while moving the AR-15 and the weapon "could have come up immediately." ROA.743-44, lines 16-6; 760. To protect officer safety during this high pressure, active shooter situation, Officer Hinojosa shot Martinez. The District Court found this action was

objectively reasonable in light of the surrounding circumstances. ROA.1090-91. However, even if Hinojosa was incorrect and Martinez was not threatening officers, this does not make his actions unreasonable. *See Ramirez v. Knoulton*, 542 F.3d 124, 129-30 (5th Cir. 2008) ("The fact that the suspect/plaintiff 'made no threatening gestures' and that the officer 'failed to consider the use of non-lethal force' did not make the use of deadly force per se unreasonable."). The District Court correctly determined that qualified immunity protects Officer Hinojosa, as his conduct was objectively reasonable in light of the circumstances presented.

The focus must be on what it is alleged that the officer perceived, not what the facts might show in hindsight. *Collie v. Barron*, 747 Fed. App'x 950, 952 (5th Cir. 2018). First, it is clear and undisputed that Martinez was carrying a firearm at the time Hinojosa shot, an AR-15 rifle. Despite the allegation that Martinez removed the clip from the rifle, there is no allegation Officer Hinojosa could perceive that fact from 100 feet away *Compare* ROA.524-25, ¶ 22 *with* ROA.525, ¶ 25. Martinez alleges Hinojosa knew he was naked, to suggest the officer should have had doubts about whether he was the shooter. However, there is no evidence to suggest that Hinojosa knew what Terrazas was wearing prior to entering the residence and any radio indication of clothing occurred only on the in-car radio after Hinojosa had exited his vehicle. *Compare* ROA.680 *with* ROA.682. But even assuming Officer Hinojosa saw Terrazas clothed before he entered the residence, that does not preclude the fact

that he could have disrobed in the "several minutes" he was inside the residence ROA.524-25, ¶ 22.  Martinez pled much about his conduct as he exited his home, but even assuming Officer Hinojosa perceived these facts, nothing absolutely precludes the reasonableness of the perception that there was still a threat. The facts are simply that Martinez was carrying an AR-15 in an ongoing active shooter situation in which one officer had already been shot. *See* ROA.680, 5:53:22, ROA.760, 1108 ("Officer Hinojosa was unaware of the shooter's identity or his clothing, but was aware someone was shooting toward him and his fellow officers."). Martinez, despite any assertions—which Hinojosa could not hear—could have raised the rifle in an instant and continued harming officers. And that is what Hinojosa perceived; Martinez moving the weapon immediately prior to the shot. It was not until after the incident ended that Officer Hinojosa learned that Martinez was not the active shooter. *See Hernandez v. Mesa*, 582 U.S. 548, 554, 137 S. Ct. 2003, 2007, 198 L. Ed. 2d 625 (2017) ("Facts an officer learns after the incident ends—whether those facts would support granting or immunity or denying it—are not relevant."). A competent officer could have believed the use of deadly force was justified under these circumstances. As such, the District Court correctly dismissed the claims against Officer Hinojosa.

**A. Whether Officer Hinojosa acted reasonably was correctly determined as a matter of law by the District Court, which correctly relied on video evidence that established the circumstances confronted by Officer Hinojosa.**

"Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown*, 623 F.3d at 253. The officer's actions "must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Id.* (citing *Graham*, 490 U.S. at 396-97). Here, the District Court properly analyzed the recordings that depicted the events as Officer Hinojosa experienced them to determine that Officer Hinojosa acted reasonably and was therefore entitled to qualified immunity.

If a video recording is provided, the courts should "assign greater weight, even at the summary judgment stage, to the . . . video recording[s] taken at the scene." *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023) (quoting *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022)). If the video contradicts either party's account, the court should "view the facts in the light depicted by the videotape." *Macias v. Watkins*, No. 23-40580, 2024 WL 3427047, at *2 (5th Cir. July 16, 2024) (quoting *Harris*, 550 U.S. at 380-81)).

The District Court was not required to consider witness testimony as to whether or not they believed Officer Hinojosa could hear Martinez's declarations that he was not the shooter when the body camera recording clearly contradicts this possibility. *See Crane v. City of Arlington*, 50 F.4th 453, 461-62 (5th Cir. 2022) ("When there is

video evidence in the record, courts are not bound to accept the nonmovant's version of the facts if it is contradicted by the video."). Officer Hinojosa testified in deposition that he could not hear Martinez when he exited the house and purportedly shouted that he was not the shooter. ROA.742, lines 18-24. This is supported by Officer Hinojosa's body worn camera recording. After Martinez exits the house and moves quickly toward the street, indistinguishable yelling can be heard on the body camera recording. ROA.680, 5:55:57. Martinez admits in his pleadings that this is inaudible. Appellant's Br., p. 17. Despite the testimony of neighbors, who are not alleged to be experts in auditory projection, who testified they could hear Martinez and therefore Hinojosa (who was located in a different position) should have been able to hear him as well, the District Court recognized that the video evidence clearly contradicts this testimony. The Court stated:

> as he moves. (Dkt. No. 119-2 at 5:51:00–5:56:00). There is no discernable audio of Plaintiff shouting "I'm not the shooter." There is some barely audible sound of someone's voice in the distance, but the words are inaudible on the audio of the body camera footage. To the extent Plaintiff asserts that this audio recording reflects what Officer Hinojosa could hear at the time of the shooting, it does not support the conclusion that Officer Hinojosa could clearly hear Plaintiff shouting "I'm not the shooter" before he fired. The Court finds that Officer Hinojosa's testimony about Plaintiff's shouting is uncontroverted by the other summary judgment evidence. Even if Officer Hinojosa could clearly hear and understand what Plaintiff was saying, it would not be unreasonable for him to conclude that the shooter may have been lying to evade the police and continue his shooting spree. (Dkt. No. 119-4 at 4).

ROA.1084. The District Court, therefore, appropriately disregarded that testimony and determined Hinojosa's actions were reasonable based on the information he had at the time he acted. ROA.1087.

The District Court also analyzed Martinez's conduct immediately preceding the shooting. The Court stated:

> Viewing that body camera video, the Court is unable to ascertain Plaintiff's actions immediately before he is shot. (Dkt. No. 119-2). However, the dash camera video, does show Plaintiff's actions before the shooting. (Dkt. No. 119-1). As Plaintiff walks down the walkway path from his front door, he is seen turning from side to side. (*Id.* at 5:55:55–5:56:00). As he reaches the street, he is either walking quickly or running. (*Id.* at 5:56:00–5:56:05). Once on the street, he is seen turning his body immediately before being shot. (*Id.* at 5:56:05–5:56:08). This is consistent with Officer Hinojosa's testimony that the man carrying the rifle had turned immediately before he shot him. (Dkt. No. 119-4 at 19).
>
> In summary, the patrol unit's dash camera footage shows Plaintiff quickly walking out of his home, briefly pausing at the top of his driveway, swaying around, then quickly moving between two parked vehicles with an object in his hand. (*See* Dkt. No. 119-1 at 5:55:55–5:56:08). Contrary to Plaintiff's narrative which suggests that he walked out of the house calmly and slowly, the video reflects that he was moving in a frantic manner as he traveled from the front yard onto the public street. Plaintiff can be seen in the video moving from side to side and never coming to a complete halt.

ROA.1109.  The District Court determined that the video clearly contradicts the narrative of events as presented by Martinez. *Id.* Accordingly, the Court was permitted to place greater weight on the video evidence.

Martinez continues to try to paint a different narrative of the events than what unfolded. He continues to claim that he acted in a non-threatening manner.

However, "the fact that the suspect/plaintiff 'made no threatening gestures' and that the officer 'failed to consider the use of non-lethal force' did not make the use of deadly force per se unreasonable." *Ramirez*, 542 F.3d at 129-30. The District Court's holding that Officer Hinojosa acted reasonably based on the information before him should be affirmed.

### B. Officer Hinojosa did not act unreasonably by failing to warn Martinez before firing

The District Court correctly held that Officer Hinojosa did not act unreasonably by failing to warn Martinez before firing. Officers must give warning before using deadly force *if* a warning is feasible. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The critical inquiry for the courts in these situations is feasibility. *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019). Martinez argues that the existing case law establishes that Officer Hinojosa acted unreasonably by failing to warn in this situation. However, the District Court correctly determined that the summary judgment evidence reflects that a warning was not feasible. ROA.1117.

Martinez argues that the cases of *Cole v. Carson* and *Baker v. Putnal*, clearly establish that Officer Hinojosa's conduct amounted to excessive force. The District Court, in great detail, analyzed how these cases are distinguishable from the facts at issue.

First, in *Baker*, this Court overturned a district court that held an officer's use of deadly force was protected by qualified immunity. *Baker v. Putnal*, 75 F.3d 190,

198 (5th Cir. 1996). In that case, this Court did not hold qualified immunity was not warranted based only on the officer's failure to warn. Rather, without any video evidence to support either party's version of the events, there was a factual question as to whether the decedent was even in possession of a weapon when he was shot by the officer. *Id.* Further, although the district court had found that the officer's actions were justified because an armed person had turned in their direction, the medical examiner's report indicated that the decedent was not facing the officer when shot. *Id.*

Here, it is undisputed that Martinez was carrying an AR-15, the weapon that was being used during the active shooting incident to which Officer Hinojosa responded. ROA.525. The video evidence and Officer Hinojosa's testimony are undisputed that Martinez turned toward Officer Hinojosa. ROA.712-13; ROA.682, 5:56:08. Finally, Officer Hinojosa had only two seconds between calling out that Martinez was carrying "a 32" and when Martinez turned prompting Hinojosa to shoot. ROA.680, 5:56:06 – 5:56:11. The facts here are those this Court indicated in the *Baker* opinion were missing to support the application of qualified immunity— possession of a weapon and turning toward the officer. *Baker*, 75 F.3d at 198. Accordingly, *Baker* does not support a holding that Officer Hinojosa's failure to warn was unreasonable in this situation where such a warning was not feasible.

Similarly, this Court found a factual dispute in *Cole v. Carson*, which also did not provide video evidence to support either factual narrative. 935 F.3d 444 (5th Cir. 2019). In that case, the district court characterized the question as to whether immunity applied to the officers' conduct as follows: whether "shooting a mentally disturbed teenager, who was pointing a gun the entire time at his own head and facing away from the officer, in an open outdoor area, and who was unaware of the officer's presence because no warning was given prior to the officer opening fire, was unlawful." *Id.* at 453. The question itself exposes the vast differences between the scenario in *Cole* from this case. Unlike the suspect in *Cole* who, according to the summary judgment evidence, viewed in the favor of the plaintiff, posed no threat to officers, here the officers were confronted with an active shooter, who had already shot an officer during the shootout. ROA.724, 727-28, 730-31, 760. Martinez then exited the home, carrying the weapon at issue, and turned toward the officers. ROA.699-701, 712-13; ROA.682, 5:55:55-5:56:05. There were no prior shots in *Cole* to put the officers on high alert. In fact, the only similarities between the two situations are that the scenarios took place outdoors and no warning was provided. However, for Officer Hinojosa, as the District Court determined, there is evidence to support that a warning was not feasible.

The District Court correctly determined that Officer Hinojosa did not violate a clearly established Fourth Amendment right to provide Martinez with a warning prior

to firing where there are no cases establishing that it is feasible to give a warning in an active shooter situation, where the perceived suspect turns toward the officers while carrying a weapon, and the officer believes he was too far from the suspect for a warning to be heard. Accordingly, the District Court's order granting summary judgment should be affirmed.

## III.　The District Court correctly dismissed Martinez's municipal liability claims against the City where there was no constitutional violation, and Martinez failed to plead failure to train, supervise, or ratification theories of liability.

Municipal liability under section 1983 must be premised on a municipal policy or custom that caused the alleged constitutional deprivation. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). The law is clearly established that the doctrine of *respondeat superior* does not apply to section 1983 actions. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). This Court has stated that "[a] municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Municipal policy, for purposes of section 1983 liability, may consist of:

　　1.　　A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an

official to whom the lawmakers have delegated policy-making authority; or

2.      A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Deep East Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

For purposes of section 1983 liability, a "policy" must be officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). "[O]nly those municipal officers who have 'final policymaking authority' may by their actions subject the government to section 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915, 924 (1988). "[A] direct casual connection must exist between the policy and the alleged constitutional deprivation. This connection must be more than a mere 'but for' coupling between cause and effect. To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it." *Deep East Texas*, 379 F.3d at 310 (quoting

*Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (emphasis added in *Deep East Texas*).

Thus, to establish municipal liability, a plaintiff must show (1) *a constitutional violation*; (2) the existence of a specific policy, practice, or custom; (3) that the identified policy, practice, or custom was the moving force behind the constitutional violation; (4) that the policy, practice, or custom was established by the final policymakers of the municipality or attributable to them; and (5) that either the official policy constitutes a facial violation of the constitution or that the final policymakers exhibited deliberate indifference as to Martinez's constitutional rights which were the subject of the violation. *Id*. at 308-311. This Court has consistently held that conclusory allegations are insufficient to support a claim of a pattern, practice, or policy of constitutional violations. See *Fraire*, 957 F.2d at 1278; *Garrett v. City of Houston, Tex.*, 102 Fed. App'x. 863, 865 (5th Cir. 2004).

Martinez's complaint fails to plead municipal liability under Section 1983. As addressed above, Martinez has failed to prove a constitutional violation. Additionally, Martinez neither adequately pled nor proved that he was harmed by an official city policy, nor that any such policy was adopted by a final policymaker of the City.

Martinez alleges that three incidents occurred between 2014 and 2017 that demonstrated the City has a policy of disregarding incidents where its officers

engaged in deadly force. ROA.528-290. These three incidents are insufficient to support a pattern of conduct that constitutes a policy. A pattern requires "sufficiently numerous prior incidents,"as opposed to 'isolated instances.'" *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). In *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002), this Court held that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry. In *Peterson*, this Court held that 27 incidents of excessive force from 2002 to 2005 did not constitute a custom or policy. 588 F.3d 838, 851 (5th Cir. 2009). This Court determined that there was no record the City condoned the allegations of excessive force. Accordingly, three claims of excessive force are not sufficient to demonstrate custom or policy attributable to the City condoning use of deadly force by its officers.

## A. Because there was no constitutional violation, Appellant's municipal liability claim must fail

The District Court correctly determined that Officer Hinojosa acted objectively reasonable during the incident in question and, as such, there was not a violation of Martinez's constitutional rights. ROA.1117-18. It is well-established precedent of this Court that when there is no constitutional violation by an officer, there can be no municipal liability. *Garz v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020). Thus, the District Court correctly dismissed the municipal liability claims against the City.

**B. Appellant failed to establish any deficient training policy of the City that caused his injury**

Martinez alleges the City created a policy or custom regarding the unlawful use of deadly force by failing to train or supervise its officers and ratifying their conduct.

The failure to train municipal employees may constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality.'" *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Thus, although municipalities are not normally liable for inadequate training of employees, failure to properly train constitutes an actionable "policy" if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390. To state a claim under a failure to train or supervise theory, a plaintiff must plead: (1) the municipality's training procedures were inadequate, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights. *Zarnow v. City of Wichita* Falls, 614 F.3d 161, 170 (5th Cir. 2010); *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). In addition, a plaintiff must allege with specificity how a particular training

program is defective. *Zarnow*, 614 F.3d at 170. "Claims of inadequate training generally require that the plaintiff demonstrate a pattern of conduct." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010).

The District Court's dismissal of Martinez's failure to train claim should be affirmed. Martinez failed to identify any training procedure of the City, failure to allege that the City was deliberately indifferent in adopting its training policy failed to allege that the inadequate training *directly* caused his injuries, and failed to allege with specificity how any training program of the City is defective.

### C. Appellant failed to establish any supervisor whose action or inaction caused his injury

To prevail on a theory of "failure to supervise," a plaintiff must establish: (1) that a supervisor either failed to supervise or train the subordinate official; (2) that a causal link exists between the failure to train or supervise and the violation of his rights; and (3) that the failure to train or supervise amounts to deliberate indifference. *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). The plaintiff must show that the misconduct of the subordinate is conclusively linked to the action or inaction of a supervisor. *Zarnow*, 614 F.3d at 169; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). Here, not only did Martinez fail to establish that there was a violation of his constitutional rights, but his Fourth Amended Complaint fails to identify a supervisor whose action or inaction caused Officer Hinojosa's alleged misconduct. As such, Martinez failed to plead a cause of action for failure to

supervise that would support a theory of municipal liability. Accordingly, the District Court's order dismissing Martinez's failure to supervise claim should be affirmed.

### D. Appellant failed to establish extreme facts condoned by the City that ratified unconstitutional behavior

The facts alleged do not present the "extreme factual situation" that would support a ratification theory of municipal liability. *See Snyder*, 142 F.3d at 798. A plaintiff may establish a theory of ratification where "the authorized policymakers approve a subordinate's decision *and the basis for it*, their ratification would be chargeable to the municipality because their decision is final." *Young v. Bd. of Supervisors*, 927 F.3d 898, 903 (5th Cir. 2019). However, ratification theory is limited, "unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification . . . is insufficient to establish an official policy or custom." *Id.* (quoting *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)). This Court found ratification of conduct when officers "poured" gunfire onto a truck and killed an innocent occupant. *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985). However, this Court has refused to find ratification in cases that align with the facts present here. *See Snyder*, 142 F.3d at 798 (refusing to find ratification in a case in which an officer shot a fleeing suspect in the back). "Moreover, [this Court has] also explained that a policymaker who defends conduct that is later shown to

be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848.

Although Martinez's cause of action alleging municipal liability does not address ratification, ROA.533-34, ¶¶ 53-56, he argued in his response to the Appellee City's motion that he raised a ratification claim by conclusively stating that the City had a longstanding policy of ratifying the use of deadly force. ROA.796, ¶65. This conclusory statement is insufficient to plead a claim of municipal liability. Martinez further stated that his ratification claim was based on Chief Trevino stating that he did not see any policy violations and made inaccurate statements regarding the facts of the incident. ROA.796, ¶65. This at most is defense of conduct, for which it is established is not ratification under this Court's precedent. *See Peterson*, 588 F.3d at 848.

The District Court's dismissal of Martinez's municipal liability claim should be affirmed. First, there was no violation of Martinez's constitutional rights, therefore there cannot be a policy to violate those rights. Second, even if there had been such a violation, Martinez did not and cannot plead a policy of the City, created by an official policymaker, that infringes on those rights, whether that policy be an officially pronounced policy or a policy created by custom or practice.

## CONCLUSION

For these reasons, the Appellees respectfully request that this Court affirm the District Court's grant of Appellees' Motion for Summary Judgment and Motion for Judgment on the Pleadings Under Rule 12(b)(c), render judgment in their favor, and dismiss Martinez's claims with prejudice.

Respectfully submitted,

*/s/ William M. McKamie*
WILLIAM M. MCKAMIE, Lead Counsel
Texas Bar No. 13686800
Southern Dist. ID. 13010
*mmckamie@toase.com*

ALICIA K. KREH
Texas Bar No. 24097953
Southern Dist. ID 3327420
*akreh@toase.com*

LINDSEY HALE
Texas Bar No. 24096435
Southern Dist. ID 3499360
*lhale@toase.com*

**TAYLOR, OLSON, ADKINS, SRALLA & ELAM, LLP**
6000 Western Place, Suite 200
Fort Worth, Texas 76107
817-332-2580
817-332-4740 (Fax)

**Attorneys for Defendants/Appellees**
**Officer David Hinojosa and City of Laredo**

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing Appellees' Brief has been forwarded to the following counsel of record in accordance with the Federal Rules of Appellate Procedure, on this 3rd day of February, 2025:

David L. Flores
dflores@rgvfirm.com
John R. Griffith
jrg@rgvfirm.com
The Griffith Law Group
4228 North McColl
McAllen, Texas 78504

/s/ William M. McKamie
William M. McKamie

## CERTIFICATE OF COMPLIANCE WITH RULE 32

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was composed using Microsoft Office Word's proportionally spaced Times New Roman typeface, with 14-point font.

I hereby certify that the brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 6,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32.2

/s/ William M. McKamie
William M. McKamie